UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KAREN MADDOX                                                                                   PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:14-CV-730-DW

CAROLYN W. COLVIN, Acting Commissioner of Social Security                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff Karen Maddox has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain judicial review of a final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits (DIB) and supplemental security income (SSI). Maddox applied for DIB and SSI on Feb. 23, 2012, alleging that she was disabled as of Feb. 17, 2012, due to ulcerative colitis, rheumatoid arthritis, diverticulitis and high blood pressure (Tr. 221, 225, 247). The Commissioner denied Maddox's claims on initial consideration (Tr. 107) and on reconsideration (Tr. 133). Maddox requested a hearing before an Administrative Law Judge (ALJ) (Tr. 77-78).

ALJ Patrick Kimberlin conducted a hearing in Louisville, Kentucky, on Nov. 26, 2013 (Tr. 79-106). Maddox attended with her attorney, Micah Daniels (Tr. 79). Maddox and vocational expert (VE) Gail Franklin testified at the hearing (Tr. 83-101, 102-106). Following the conclusion of the hearing, ALJ Kimberlin entered a hearing decision on Jan. 15, 2014, that found Maddox is not disabled for the purposes of the Social Security Act (Tr. 49-61).

In his adverse decision, ALJ Kimberlin made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through Dec. 31, 2017.

2.  The claimant has not engaged in substantial gainful activity since Feb. 17, 2012, the alleged onset date (20 C.F.R. 404.1571, *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disk disease; right knee osteoarthritis; colitis, and sinusitis (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except occasional climbing of ramps and ladders, occasional stooping, kneeling, crouching, and crawling, but no climbing of ladders, ropes, or scaffolds. The claimant is limited to frequent bilateral overhead reaching. The claimant should avoid concentrated exposure to extreme cold, humidity, and hazards and avoid even moderate exposure to vibration.

6. The claimant is capable of performing past relevant work as a secretary and her past relevant work as a medical transcriber. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from Feb. 17, 2012, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

Maddox sought review of the hearing decision by the Appeals Council (Tr. 45). The Appeals Council denied her request for review, finding no reason under the Rules to review ALJ Kimberlin's decision (Tr. 1-6). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less

than 12 months. See, 20 CFR §§ 404.1505, 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Mowery v. Heckler*, 771 F.2d 966, 971-72 (6th Cir. 1985).

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart B of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii) The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3) The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Herr v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g). The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.). Substantial evidence is defined by the

4

Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*). It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury. *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Review.**

Maddox, who is representing herself, has submitted two letter briefs for the Court's review.[1] The Court has carefully examined both. The first brief focuses on certain medical events that occurred after the adverse hearing decision of ALJ Kimberlin was entered on Jan. 15, 2014 (Tr. 49-61). Maddox refers the Court specifically to an emergency room visit to Jewish Hospital in Louisville on May 4, 2014, when she was diagnosed with pain related to cervical

---

[1] DN 12, Bf of Jan. 20, 2015; DN 16, Bf of April 14, 2015.

radiculopathy. She explains that treatment notes from this post-hearing event describe the level of her neck and back pain more accurately than her hearing testimony did. Maddox testified at the Nov. 26, 2013 hearing that her neck pain level was a level 5 on a 10-level scale (Tr. 87). She now claims that her neck and back pain levels are substantially higher than what she earlier testified too at the hearing.

Maddox submitted her Jewish Hospital ER records, as well as a number of other post-hearing treatment records, to the Appeals Council for its review on administrative appeal prior to proceeding to federal court with her current complaint (Tr. 7-13, 14-21, 22-34, 35-37). Examination of these records indicates that on May 4, 2014, Maddox was taken directly to the Jewish Hospital ER from church with complaints of radiating pain from her neck down her right arm into her hand (Tr. 24).

Although she then believed that her pain might be related to a heart attack, examination at the hospital resulted in a diagnosis of cervical radiculopathy (Tr. 7). She was prescribed a Medrol Dosepak and advised to follow up with U of L Neurosurgery. Maddox did follow up with Dr. Warren Boling of U of L Neurosurgery Dept. (Tr. 16-23). Treatment notes of Dr. Boling dated June 11, 2014, reflect that Maddox complained of neck pain in the right cervical region that had "not changed since [her] last office visit." (Tr. 16). Dr. Boling described her subjective complaints as involving significant numbness/tingling in the right hand and fingers adding that, "It is currently mild and involves the distal upper extremity and affects the patient's ability to lift, carry and grasp." (Id.).

The doctor noted that Maddox had "no additional symptoms" and was completing her Medrol Dosepak "with improvement in the pain." (Id.). An MRI scan of her cervical spine on June 10, 2014, revealed "small degenerative osteophytes at the C5-C6 and C6-C7" along with

"small associated annular disk bulges" and "minimal degenerative changes … along the uncovertebral joints with no significant degenerative changes … seen along the articular facets." (Tr. 19-20). Based on this imaging and Maddox's examination and subjective complaints, Dr. Boling concluded that Maddox presented with degenerative disk osteophyte complexes at multiple levels including the C5/C6 and C6/C7 with a right paracentral disk herniation at the C5-6. (Tr. 18). The doctor consequently concluded that most of her arm discomfort was most likely coming from the herniated disk at the C5/6. His treatment options for Maddox included traction, steroid injections into the C5/6 area or surgical intervention if her pain becomes intractable. Maddox elected to undergo a nerve injection at the C5/6 along with cervical traction, but otherwise was "not enthusiastic about undergoing further surgery…" (Id.).

Maddox now appears to rely upon the above-described post-hearing treatment notes to argue that her limitations are more directly related to her degenerative osteoarthritic condition in her cervical spine rather than her ulcerative colitis, which was her primary concern during the administrative hearing before ALJ Kimberlin. (Tr 83-101)

The second primary issue that Maddox presents in her first letter brief involves the testimony of the vocational expert, Gail Franklin. Franklin as earlier noted testified at the 2013 hearing (Tr. 102-106). In particular, VE Franklin testified that Maddox's prior employment as a secretary involved a skilled, sedentary occupation as defined by the *Dictionary of Occupational Titles* (DOT) (Tr. 103). Franklin similarly testified that Maddox's past relevant work as a medical transcriber also was skilled, sedentary work. (Id.). On questioning by the ALJ, Franklin confirmed that both prior jobs were performed at a sedentary exertional level and involved skilled employment (Id.).

Maddox now appears to argue that both jobs, as she performed them, involved more than sedentary level exertion. She cites her duties of employment at Hilliard-Lyons, which required her to lift 20 lbs. of office supplies, along with her responsibility for handling bins of lab specimens as part of the duties of her job as a medical transcriptionist, as proof that her prior work as she performed it was not sedentary work. Accordingly, she first asks the Court based on the post-hearing medical documents to reevaluate her subjective complaints as part of determining her residual functional capacity while at the same time asking that the Court reevaluate the exertional nature of her past relevant work, as well.

The second letter brief submitted by Maddox on April 14, 2015, relates to another, post-hearing medical incident. On March 20, 2015, while using a computer at the Jefferson Community College, Maddox apparently fainted and fell backward striking her head on the floor. She again was taken to Jewish Hospital ER in Louisville where she was diagnosed with a vasovagal syncope[2] incident after being admitted for testing that occurred over four days. Maddox in this second letter brief indicates that her condition causes unexpected blackouts due to decreased blood pressure and heart rate.

She has attached to her letter brief various portions of medical records from Jewish Hospital dated March 24, 2015, which include patient education materials on near syncope - - sudden weakness, dizziness or feeling like you might pass out. Maddox relies upon this post-hearing evidence, similar to the earlier-described Jewish ER treatment for her cervical radiculopathy, as being substantial evidence to support her application for disability benefits.

---

[2] Vasovagal syncope occurs when the body overreacts to certain triggers causing a sudden drop in heart rate and blood pressure leading to a reduced blood flow to the brain causing a brief loss of consciousness. See http://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/basics/definition/con-20026900

Unfortunately, the Court cannot consider any of this post-hearing evidence as part of its determination of whether the decision of ALJ Kimberlin is supported by substantial evidence and in accord with the controlling law. The evidence that Maddox submitted to the Appeals Council concerning her post-hearing treatment may not be considered as part of the record for determining whether the decision of an ALJ is supported by substantial evidence. *See, Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (The District Court cannot consider new evidence in deciding whether to uphold, modify or reverse a decision of the ALJ where the Appeals Council has considered such evidence but has denied the claimant's request for review of the adverse hearing decision); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (Evidence submitted to the Appeal Council after an adverse decision of the ALJ cannot be considered as part of the record for the purposes of substantial evidence review). At most, such evidence may only be the basis for a specific request for a remand to the Commissioner pursuant to Sentence 6 of 42 U.S.C. §405(g). *Foster*, 279 F.3d at 357. Maddox has not made such a request, or otherwise attempted to argue that a Sentence 6 remand is appropriate and therefore we may not address this unraised argument. *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681-82 (6th Cir. 1989) (Arguments not presented are deemed waived).[3]

Further, Maddox essentially asks us to reevaluate the credibility of her testimony concerning her neck pain. She maintains that her hearing testimony does not accurately reflect the severity of such pain. For several reasons, however, we cannot act on her request in this

---

[3] While the Court may not now reopen the administrative record to consider post-hearing evidence not presented to the ALJ, Maddox has the option to renew her claim for disability benefits given that her expiration date for her insured status does not expire until Dec. 31, 2017. The significance of this fact is that she may yet be able to raise her arguments concerning the impact of these post-hearing medical incidents as support for a new claim for DIB or SSI benefits based on material changes in her medical condition that have occurred since the adverse hearing decision of Jan. 15, 2014. Such post-hearing medical incidents, however, cannot now be used to challenge the prior hearing decision on its merits.

regard. First, as we have explained above, the post-hearing evidence provided to the Appeals Council and to this Court cannot be a basis on which to challenge the substance of ALJ Kimberlin's adverse hearing decision. At most, under certain limited circumstances such evidence might support a Sentence 6 remand, relief that Maddox has not requested.

Just as importantly, consideration of claimant's subjective symptoms such as her pain are governed by 20 C.F.R. §§404.1529 and 416.929 along with SSR 96-7. These regulations and rulings direct the Commissioner to consider the extent to which a claimant's symptoms are consistent with the objective medical evidence along with other evidence such as medical reports from treating and consultative sources that discuss the claimant's medical history, diagnosis, prescribed treatment, daily activities, work efforts and the impact of her symptoms on her ability to perform work. *Id*.

The federal courts accord "great deference to the credibility determination" of the ALJ. *Warner v. Comm'r*, 375 F.3d 387, 392 (6th Cir. 2004). *See also, Walters v. Comm'r*, 127 F.2d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y*, 818 F.2d 461, 463 (6th Cir. 1987)). The ALJ is entitled to discount the credibility of a claimant when the claimant's testimony concerning his or her pain is contradicted by the medical reports or other evidence of record at the time of the decision. *Winning v. Comm'r*, 661 F.Supp.2d 807, 822 (N.D.Ohio 2009) (citing *Walters*, 127 F.3d 525, 531 (6th Cir. 1997)).

When considering the credibility of a claimant concerning his or her complaints of pain the ALJ takes into consideration: (1) the daily activities of the claimant; (2) the location, duration, frequency and intensity of the claimant's symptoms including pain; (3) any factors that precipitate or aggravate the symptoms; (4) the dosage, type, effectiveness and side effects of any medication taken to alleviate such symptoms or pain; (5) treatment that the claimant has received

for relief of his or her symptoms; (6) any measures other than treatment that the claimant uses to relief his or her symptoms; and (7) any other factors relating to the functional limitations and restrictions of the claimant due to such symptoms or pain. *Winning*, 661 F.Supp.2d at 823 n.14 (citing SSR 96-7p).

The credibility determination of ALJ Kimberlin concerning Maddox's pain complaints is contained at pp. 7-11 of his hearing decision (Tr. 55-58). ALJ Kimberlin correctly noted Maddox's hearing testimony that her neck pain rated 5 out of 10 with medication. He continued, however, to determine based upon a thorough review of the medical evidence of record that her complaints regarding her pain were not fully credible given the treatment notes of Maddox's treating physicians, the reports of consultative physical examiner, Dr. Urda (Tr. 334-340), the reports of the two non-examining state agency physicians and Maddox's own report of daily activities and her demeanor at the hearing.

ALJ Kimberlin in this respect observed that her treatment records appeared to be routine in nature and that the great bulk of her medical treatment occurred *prior* to her alleged onset date of Feb. 17, 2010. (Tr. 56). Although an MRI scan of her cervical spine taken in January of 2008, did confirm the presence of degenerative disk disease at the C3 to C7 with a disk protrusion at the C5-6 and herniation at the C6-7, Maddox nonetheless only received conservative treatment for her cervical degenerative disk disease that included physical therapy and home traction, both of which reduced her pain.[4]

Physical examination in 2010 confirmed a normal range of motion in the neck with no focal motor deficits (Tr. 421, 436, 453). Maddox' neck was noted by Dr. Lach in May of 2012,

---

[4] In fact, although not determinative, the post-hearing treatment notes submitted to the Appeals Council likewise indicate that as of May 14, 2014, Dr. Boling of the U of L Frazier Rehab Institute also characterized Maddox's treatment in this regard as being conservative with physical therapy and chiropractic care (Tr. 18).

to be supple with a normal range of motion without muscle weakness in the extremities. (Tr. 331). Likewise, Dr. Urda during his consultative physical examination in May of 2012, found that Maddox abduction and rotation of her shoulders were within normal limits with slightly reduced flexion and rotation of the cervical spine (Tr. 335-336, 338). Both of the motor vehicle accidents that Maddox attributes as the current source of her cervical discomfort are correctly noted to have occurred in August of 1997, and in December of 1998, more than a decade prior to the time that Maddox ceased employment as a data entry medical transcriptionist in February of 2012.

ALJ Kimberlin also correctly noted that Maddox's reported activities of daily living were inconsistent with the presence of disabling pain. Maddox at the time of the hearing had lived alone and had maintained her own household independently, as well as caring for her mother (Tr. 89-91). During her psychological consultative examination by Dr. Catt on August 21, 2012, Maddox reported that she retained the ability to do housework, perform yard work weekly, to attend church regularly, garden, visit with her neighbors daily, shop and manage her own financial matters (Tr. 344).

Given the thorough consideration of the record by ALJ Kimberlin in his adverse hearing decision, the Court concludes that his credibility determination concerning Maddox's complaints of disabling pain is well supported by substantial evidence. This conclusion leaves only one remaining argument for consideration. Maddox's argument related to the testimony of the vocational expert, Gail Franklin (Tr. 102-106). Ordinarily, we consider whether the testimony of a vocational expert may constitute substantial evidence to support a decision of the ALJ at step 5 of the sequential evaluation process. *See, Ealy v. Comm'r*, 594 F.3d, 504, 512-13 (6th Cir. 2010) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert

(VE) in response to a hypothetical question but only 'if the question accurately portrays the claimant's individual physical and mental impairments.'") (citing *Varley v. Sec'y of HHS*, 820 F.3d 777, 779 (6th Cir. 1987)).

Here, the sequential evaluation process ended at step 4 with the determination that Maddox retains the residual functional capacity despite her severe impairments to perform the duties of her past relevant work as a secretary and a medical transcriptionist, as the duties of those two job positions are performed in the national economy. Maddox now contends that the duties of her employment, as she performed it, exceeded the level of sedentary work so that she is precluded from returning to her past relevant work. If that were so, then the Commissioner would be required to continue to step 5 in her analysis to determine with any alternate substantial gainful activity existed in the national economy that Maddox remains capable of performing given the limitations imposed by her severe impairments.

Review of the record, however, reveals that both of Maddox's prior jobs were performed at a sedentary level, as confirmed by her own description of her job duties set forth in her work history report (Tr. 262-272). For example, when asked to indicate the heaviest weight she lifted while working as an executive secretary at Hilliard-Lyons, Maddox responded by placing a checkmark in the category for "less than 10 lbs" following her motor vehicle accident of Aug. 1997. She similarly reported with respect to her job as a medical transcriptionist that the heaviest weight that she "rarely lifted" was a box of paper that weighed up to 20 lbs. (Tr. 264). It therefore appears to the Court that Maddox by the information that she provided to the Commissioner confirmed that her prior employment actually was performed at a sedentary level by her.

Nonetheless, even if that were not the case, under SSR 82-61, 1982 WL 31387, a claimant may properly be found to be not disabled if she remains capable of performing the duties of her past relevant work as that work is ordinarily required by employers throughout the national economy itself, even if the prior jobs as actually performed by her involved a greater exertional level. *See Sweeney v. Commissioner,* no. 2014 WL 4374348 at *9-10 (E.D. Mich Seopt. 4, 2014). Because the VE testified based on the DOT that the positions of secretary and medical transcriber are performed in the national economy at a sedentary level, and because the ALJ properly determined at finding of fact 5 that Maddox retains the residual functional capacity to perform a limited range of sedentary work, the decision of the Commissioner that Maddox is not disabled appears to the Court to be amply supported by substantial evidence and is in accordance with law. (Tr. 55-59)

For these reasons, the Court shall affirm the decision of the Commissioner and shall dismiss the plaintiff's complaint with prejudice by a separate and final judgment.

Cc: Counsel of Record
Karen Maddox, 115 North 37th Street, Louisville, KY 40202